# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MICKAEL GORREMANS, | Case No. CV 10-472-N-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Petitioner Mickael Gorremans' Petition for Review
(Dkt. 1), filed September 16, 2010, seeking review of the Social Security Administration's final
decision to deny his disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g).
Having carefully reviewed the record and otherwise being fully advised, the Court enters the
following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On January 9, 2009, Mickael Gorremans ("Petitioner") applied for SSI disability benefits,
alleging a disability onset date of December 24, 2008, when he was 56 years old. (AR 105-111).
Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 65-66, 72-74).
Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR
86). On February 9, 2010, ALJ James W. Sherry held a hearing in Spokane, Washington at
which time Petitioner, represented by attorney Louis Garbrecht, appeared and testified. (AR 35-
64). A vocational expert, K. Diane Kramer, also appeared and testified. (AR 35-64). At the

**MEMORANDUM DECISION AND ORDER - 1**

time of the hearing, Petitioner had past relevant work as a groundskeeper, machine operator, janitor, floor cleaner/buffer, certified nurses assistant, and home health aide. (AR 21).

On April 8, 2010, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 14-22). Petitioner timely requested review from the Appeals Council on June 3, 2010. (AR 6-10). The Appeals Council then denied review on August 23, 2010 (AR 1) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by not giving controlling weight to the opinion of his treating physician, Dr. Dirks, and improperly rejecting Petitioner's own testimony. He also argues that the residual functional capacity finding is not supported by the record and that Medical-Vocational Guideline 202.06 directs a finding of disabled.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

### A.      Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA since January 9, 2009, the application date.  (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "multilevel cervical degenerative disk disease with facet arthrosis, status post disectomy and fusion and cervical laminectomy at C3 & C4 with autograft; and central cord syndrome." (AR 16).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's

**MEMORANDUM DECISION AND ORDER - 5**

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ ruled that Petitioner has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). The ALJ also determined that Petitioner could perform his past relevant work as a janitor, certified nurse's assistant, home health aide, and groundskeeper. The ALJ determined that this work does not require performance of work-related activities precluded by Petitioner's residual functional capacity. (AR 21).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Because the ALJ found Petitioner capable of performing past relevant work, he did not have to proceed to step five. However, the ALJ did found that even if Petitioner was restricted to less than a full range of light work, there were jobs that existed in significant numbers in the regional and national economies, of cleaner I and electronics assembler, that Petitioner could perform. (AR 21).

B.      Analysis

1.      Petitioner Credibility

Petitioner contends that the ALJ gave insufficient reasons for rejecting his testimony.  In

his opinion, the ALJ stated the claimant's statements concerning the "intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment." (AR 18).  The ALJ further stated that the

objective evidence established that Petitioner is capable of performing basic work activities.  The

ALJ remarked that Petitioner did not follow through with physical therapy as recommended by

his treating physician, Dr. Dirks, because he could not afford it and that he only medicates his

pain with over-the-counter medications every other day.  The ALJ also noted that while the

claimant described daily activities which are fairly limited, great weight was not given to this

evidence because the "allegedly limited daily activities cannot be objectively verified with any

reasonable degree of certainty" and because of the difficulty attributing "that degree of limitation

to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak

medical evidence . . ." (AR 19).   The ALJ further concluded:

> The claimant's statements on the function report are not entirely
> credible.  He said he can perform his personal care slowly.  He is
> able to prepare simple meals.  He claims he is fairly limited in
> several areas as a result of paralysis.  He claimed he cannot do any
> housework, he cannot drive, and he cannot handle money.  He also
> stated that he is under doctor's orders to not go outside.  There is
> no evidence in the record of continued paralysis in the upper
> extremities.  The treatment notes show the claimant's strength in
> his upper extremities has continued to improve (at least 4/5
> strength).  Furthermore, there is no reference in the treatment
> record to any doctor directing the claimant to not go outside.  The
> claimant testified he has problems gripping and grasping items
> with his hands; however, after the first surgery, it is noted to have
> improved (4/5 strength after first surgery).  Furthermore, this

testimony is not consistent with the claimant's testimony that he is able to fish, which shows he is able to hold on to a fishing pole and reel in a fishing line, which requires an ability to grip and grasp items.

The claimant testified he has difficult reaching overhead, but there is no indication in the treatment notes of any limitations in this area. There are no range of motion tests and no significant signs of weakness. The claimant asserted he has problems with stairs; however, he also said he has several flights of stairs at home to climb and descend. This suggests the claimant is able to climb and descend stairs with little difficulty. The bulk of treatment notes do not support the claimant's assertions regarding his limitations in walking and standing. It has been noted the claimant has no difficult with ambulation. Finally, the claimant stated he can only sit for no more than ½ hour; yet, the hearing lasted longer than ½ hour and the claimant showed no signs of needing to change positions.

(AR 19-20).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id*. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*. The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily

activities, claimant's work record and testimony from physicians and third parties concerning the

nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*,

278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and

frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side

effects of medications; and treatment measures taken by claimant to alleviate those symptoms.

*See* Soc. Sec. Ruling (SSR) 96-7p. Here, the ALJ focused on inconsistencies in claimant's

testimony as well as between his claimed limitations and the support for those limitations in the

medical record. The ALJ noted that while Petitioner claimed to have great difficulty grasping and

gripping many everyday items, he also testified that he would go fishing which would be

inconsistent with the claimed limitations.[1] Additionally, the ALJ remarked that although

Petitioner stated he could not sit for longer than 20 to 30 minutes at a time, the hearing lasted

longer than 30 minutes and he did not appear to need to switch positions. The ALJ also observed

that Petitioner testified to extreme limitations in his upper extremities as well as with walking and

standing, yet the medical evidence demonstrated improved strength (at least 4/5) in his upper

extremities after his surgeries and indicated no problems with ambulation. While lack of medical

evidence cannot be the sole reason for rejecting pain testimony, "medical evidence is still a

---

[1]    The Court has noted that Petitioner takes issue with various of the activities
attributed to him by the ALJ, for the reason that Petitioner contends the ALJ is mistaken in his
assessment of the record in that regard, or reads too much into such things, for purposes of
discounting the Petitioner's credibility. The Court agrees that the mere fact that a residence has
stairs, for example, does not necessarily mean that someone who lives there can easily navigate
such stairs, or that, similarly, the fact that someone might go fishing means necessarily that they
can easily grasp and handle the lures and bait and other small items that go along with that.
However, the ALJ has drawn upon a variety and number of different base points upon which he
has assessed Petitioner's credibility, and this Court cannot say that his conclusions in doing so
are so strained as to constitute an abuse of the discretion to which he is entitled.

**MEMORANDUM DECISION AND ORDER - 9**

relevant factor in determining the severity of the claimant's pain and its disabling effects."

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ also focused on treatment

measures taken by Petitioner, which he testified was to use over-the-counter pain medication

every other day. Over-the-counter pain medication is an example of "evidence of 'conservative

treatment'" that "is sufficient to discount a claimant's testimony regarding severity of an

impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Where, as here, there is substantial evidence in the record to support the ALJ's credibility

finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959

(9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not

substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Court reviews the administrative record as a whole to determine whether substantial evidence

supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is

not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is

supported by the requisite findings and record evidence. Here, it is, and the Court will not

substitute its own assessment for that of the ALJ.

## 2.     Treating Physician's Opinion

Petitioner argues that the ALJ improperly rejected the opinion of his treating physician,

Dr. Dirks, by relying on the opinion of a non-examining physician.

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1)

those who treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant

(nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more

weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

The ALJ provides a detailed description of Petitioner's medical records, which come from his treating surgeon, Dr. Dirks. On January 27, 2009, following Petitioner's second surgery, Dr. Dirks stated that Petitioner was not released back to work and the issue should be reevaluated in

three months.  (AR 262).  On April 9, 2009, he opined that Petitioner was "disabled and unable to return to work at this stage."  (AR 300).  On November 3, 2009, the last treatment note from Dr. Dirks, he stated that he supported Petitioner in his quest for obtaining Social Security disability as he did "not believe he will be able to have gainful employment at this time."  (AR 304).

In regard to Dr. Dirks' opinions as to disability, the ALJ gave his opinion little weight and stated:

> Dr. Dirks provides no range of motion testing in the treatment notes.  His treatment notes show the claimant's condition has improved after both surgeries.  Muscle strength testing shows the claimant has at least 4/5 strength in the upper extremities.  There is no evidence of ongoing paralysis in the upper extremities.  Although the doctor stated the claimant is 'disabled,' it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(AR 20-21).

While a treating physician's opinion is entitled to great weight, the ALJ is not bound by his or her opinion on the ultimate issue of disability.  *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  This is especially true if the opinion is conclusory and not supported by the clinical findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Matney*, 981 F.2d at 1019.  The ALJ does not discount the medical records from Dr. Dirks,

instead he provides a thorough discussion of Petitioner's medical history. (AR 18-19). However,

the ALJ found that Dr. Dirks' opinion of disability departed "substantially" from the rest of the

evidence in the record and conflicted with his own treatment notes and the clinical findings. (AR

21). Under the Social Security regulations, the ALJ is not required to follow a treating

physician's opinion that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(e)(1).

Additionally, these opinions of treating physicians are not entitled to any special significance. *Id.*

at § 416.927(e)(3). Lastly, while, as Petitioner contends, the ALJ did give significance to the

Physical Residual Functional Capacity Assessment completed by a non-examining physician, this

assessment was not used as a basis for rejecting Dr. Dirks' opinion on disability. Instead, the ALJ

provided specific and legitimate reasons for giving Dr. Dirks' opinion regarding disability little

weight.

### 3. Residual Functional Capacity Finding

Petitioner contends there is not substantial evidence in the record to support the ALJ's

finding of a medium residual functional capacity. A claimant's residual functional capacity is the

most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant

evidence in the record when making this determination. *Id*. The regulations define "medium

work" as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

In finding that the Petitioner could perform the full range of medium work, the ALJ relied,

in part, on the opinions of two non-examining state agency physicians who reviewed the medical

record and opined that Petitioner could perform medium work. (AR 286-98, 299). Petitioner

contends that the ALJ should not rely on these opinions because they were made without the

November 3, 2009 treatment note of Dr. Dirks which stated that he "continued to show signs and symptoms of central cord syndrome" and that he "continues to exhibit poor walking ability and poor strength." (AR 304). Although the ALJ gave "significant weight" to the assessment of the state agency physician, Dr. Dickey, this was not the only evidence he relied upon in forming his assessment. The ALJ also evaluated the medical evidence from Dr. Dirks, including this November 3, 2009 treatment note, and Petitioner's own testimony. (AR 18-20). *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding the ALJ was not required to incorporate opinion evidence which was permissibly discounted). The ALJ commented on the November 3, 2009 treatment note and remarked that other treatment notes found "claimant's strength was measured as at least 4/5 and it has been noted the claimant's ambulation is good." (AR 19). The ALJ has considered all the relevant evidence in making his residual functional capacity finding and it is supported by substantial evidence.

Although it was not raised by Petitioner, when evaluating the ALJ's residual functional capacity finding, the Court sua sponte examined whether the ALJ should have further developed the record in this case. Under Ninth Circuit law, an ALJ has "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ must supplement the record if there is "ambiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence." *Id*. (citations omitted); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). When reviewing this, the Court determined that the evidence was in conflict, rather than ambiguous and the ALJ's duty to develop the record was not invoked. Even though this is a case in which the Court has some misgivings about the result and those misgivings may have

caused the Court to decide the case differently, the ALJ is entitled to deference when the decision is supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### 4. Medical-Vocational Guideline 202.06

Petitioner contends that under Medical Vocational Guideline 202.06, he should be found disabled. Medical Vocational Guideline 202.06 directs a finding of disability where a claimant is limited to light work, is of advance age (55 and older), has a high school education and does not have transferrable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.06.

In his decision, after finding that Petitioner was capable of performing past relevant work, thus directing a finding of not disabled, the ALJ went on to state that even if claimant was "restricted to less than a full range of light work . . . the vocational expert testified [he] could perform the jobs of cleaner I and electronics assembler, jobs which exist in significant numbers in the regional and national economy." (AR 21).

Petitioner is correct that under Ninth Circuit law, a vocational expert's testimony cannot "supplant or override a disability conclusion dictated by the Guidelines." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006). The Commissioner contends that any error made by the ALJ in this regard is "harmless error."

The Ninth Circuit has affirmed "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). For example, in *Matthews v. Shalala*, the ALJ failed to include one of claimant's limitations in his hypothetical to the

**MEMORANDUM DECISION AND ORDER - 15**

vocational expert. 10 F.3d 678, 681 (9th Cir. 1993). However, because the claimant had failed, at step four, to show that he could not return to his past work, the burden remained on him and the ALJ was not required to rely on the vocational expert's testimony to show that the claimant could perform other kinds of work. *Id*. The court concluded: "The vocational expert's testimony was thus useful, but not required . . . Any error would have been harmless." *Id*.

Similarly, in this case, the ALJ concluded that Petitioner had the residual functional capacity to perform the full range of medium work (AR 16) and thus could perform his past relevant work (AR 21). The ALJ then found, alternatively, that even if Petitioner was limited to light work, significant jobs that he could perform existed in the national economy. (AR 21). This was an unnecessary step that the ALJ was not required to perform having found Petitioner capable of performing past relevant work and not disabled at step four. Accordingly, if an error was made by the ALJ in not following the Medical-Vocational Guidelines, it was harmless.

### IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Indeed, in this case, this Court might well have found differently if was to decide the case *de novo*. However, such a statement is drawn from a cold record, and it is not this

Court's role to alter the ALJ's decision without some appropriate basis under the law for doing so, consistent with its role as a reviewing court only. Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

### V. ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED: **March 16, 2012**

_____

Honorable Ronald E. Bush
U. S. Magistrate Judge